**SO ORDERED: March 11, 2010.**



**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURTS
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRIAN KEITH SCOTT and | ) | Case No. 09-13038-JKC-7A |
| MICHELLE DAWN SCOTT, | ) | |
| | ) | |
|     Debtors. | ) | |
| _____ | ) | |
| RICHARD E. BOSTON, as the | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 09-50655 |
| | ) | |
| CHRYSLER FINANCIAL SERVICES | ) | |
| AMERICAS LLC d/b/a/ CHRYSLER | ) | |
| FINANCIAL f/k/a DAIMLERCHRYSLER | ) | |
| FINANCIAL SERVICES AMERICAS LLC, | ) | |
| | ) | |
|     Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**ON CHRYSLER FINANCIAL'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant Chrysler Financial's ("Chrysler") Motion

for Summary Judgment against Plaintiff Richard E. Boston, in his capacity as the Chapter 7 Trustee

(the "Trustee"). Having reviewed the parties' respective submissions, the Court issues the following Findings of Fact and Conclusions of Law.

### Findings of Fact

On or about September 22, 2008, Debtors purchased a 2008 Chrysler Town & Country (the "Vehicle") from Dellen Chrysler-Dodge-Jeep pursuant to a retail installment contract (the "Contract") under which Chrysler, as Dellen's assignee, was granted a lien on the Vehicle. Per the terms of the Contract, Chrysler's lien was then noted on the certificate of title issued by the State of Indiana for the Vehicle. Thereafter, Chrysler assigned the Contract to a "securitized trust" (the "Trust").[1] Chrysler has since acted as the servicer for the Contract. The Trust did not add its name to, or otherwise note its lien on, the Vehicle's certificate of title.

Debtor filed a voluntary Chapter 7 bankruptcy petition on September 3, 2009. Thereafter, on October 23, 2009, the Trustee filed a Complaint to Avoid Preference and Post-Petition Payments and to Declare Chrysler Financial's Lien as Unsecured and Recover Property of the Estate (the "Complaint"). The various avoidance actions alleged in the Complaint are based on the premise that because the Trust did not note its name or interest on the Vehicle's certificate of title, then its lien is unperfected.

On January 2, 2010, Chrysler filed a Motion to Dismiss under Federal Rule of Civil Procedure 12. In support of its Motion, Chrysler offered materials outside of the pleadings. Accordingly, the Court deemed the Motion to Dismiss to be one for summary judgment pursuant

---

[1] In his Sur-Reply, the Trustee suggests that there is some issue as to whether Chrysler assigned the stream of receivables to the Trust but otherwise retained its security interest. *Trustee's Sur-Reply* at 4-6. The Court is unsure why the Trustee has raised this issue, as Chrysler makes clear in its briefs that it assigned the entire Contract, *i.e.*, both the note and security interest, to the Trust. *See Chrysler's Motion to Dismiss* at 2. The Court finds no argument or suggestion by Chrysler that it somehow assigned the stream of payments to the Trust but retained the lien.

to Federal Rule of Civil Procedure 12(d). Hereinafter, the Court shall refer to Chrysler's Motion to Dismiss as a Motion for Summary Judgment and will apply the standards applicable under Federal Rule of Civil Procedure 56.

## Conclusions of Law

On summary judgment, Chrysler raises three primary arguments: First, that the case should be dismissed because the Trustee failed to name an indispensable party by not naming the Trust as a defendant; second, that the Vehicle is no longer property of the estate because the Trustee failed to take the action required under 11 U.S.C. § 362(h); and third, that the premise of the Trustee's claims–that the Trust's lien is unperfected–is incorrect and that the claims, therefore, fail as a matter of law. This adversary proceeding is just one of many identical or nearly identical proceedings[2] that were filed by a group of Chapter 7 trustees since October of 2009. Given the importance of the substantive issue presented by those proceedings, the Court chooses to bypass the first two arguments raised by Chrysler–as important and interesting as they may be–in favor of a ruling solely on the merits of the Trustee's Complaint.[3] Thus, the determinative question is whether the Trust's lien on the Vehicle is perfected under Indiana law.

---

[2] To date, 60 of these lawsuits have been initiated in this jurisdiction, although approximately 30 have been have been dismissed. Of those that remain open, approximately twenty are pending before this Court.

[3] At a hearing on February 4, 2010, at which counsel for the Trustee, Julie A. Camden, and counsel for Chrysler, Elizabeth B. Alphin, were present, the Court stated its intention to focus solely on the merits in ruling on Chrysler's summary judgment motion. Both attorneys agreed with this approach.

The Court further notes that in its Reply, Chrysler argues that the Trustee's Complaint fails to state a claim for which relief can be granted because it does not meet the heightened pleading standard established by the United States Supreme Court in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, —U.S.—, 129 S.Ct. 1237, 173 L.Ed.2d 868 (2009). As indicated above, the Court believes that a ruling on the merits of the Trustee's Complaint is in everyone's best interest. The Court, therefore, chooses to forego a discussion of the Complaint's sufficiency under *Twombley* and *Iqbal* as well.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. at 2554. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the nonmovant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324, 106 S.Ct. at 2553. If the nonmovant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)).

### A. Revised Article 9 and Indiana's Certificate of Title Act

To determine whether the Trust's lien on the Vehicle is properly perfected, the Court looks first to the Uniform Commercial Code as adopted in Indiana.[4] Pursuant to § 9.1-309, certain

---

[4] Indiana's version of the Uniform Commercial Code (the "U.C.C.") is found in Title 26 of the Indiana Code. Article 9 of the U.C.C., which pertains to secured transactions, was revised effective July 1, 2001 ("Revised Article 9"). Indiana's adoption of Revised Article 9 is designated in Article 1 of Title 26 as Chapter 9.1. Hereinafter, the Court will refer to the relevant sections of Indiana Revised Article 9 as "§ 9.1-(subsection)." Where the reference is to the U.C.C. generally, rather than to Indiana's version of it, the Court will refer to it as "Revised Article 9" or by "Revised § 9-(subsection). The Court further notes that while Chapter 9.1 is not identical in all respects to Revised Article 9, the provisions at issue here are consistent with the U.C.C.

4

purchase money security interests in consumer goods are perfected upon attachment.  Excepted from

this automatic perfection are purchase money security interests in consumer goods subject to § 9.1-

311(a) and (b).  Those provisions, in turn, state in relevant part:

> (a) Except as otherwise provided in subsection (d), the filing of a financing statement
> is not necessary or effective to perfect a security interest in property subject to:
>
> * * * * *
>
> (2) **any Indiana certificate-of-title statute covering automobiles, trailers, mobile
> homes, boats, farm tractors, or the like, which provides for a security interest
> to be indicated on the certificate as a condition or result of perfection.**
>
> (b) Compliance with the requirements of a statute, regulation, or treaty described in
> subsection (a) for obtaining priority over the rights of a lien creditor is equivalent to
> the filing of a financing statement under IC 26-1-9.1.  **Except as otherwise provided
> in subsection (d), IC 26-1-9.1-313, IC 26-1-9.1-316(d), and IC 26-1-9.1-316(e) for
> goods covered by a certificate of title, a security interest in property subject to
> a statute, regulation, or treaty described in subsection (a) may be perfected only
> by compliance with those requirements,** and a security interest so perfected
> remains perfected notwithstanding a change in the use or transfer of possession of
> the collateral.

(emphasis added).  Section 9.1-311(c) further provides:

> (c) Except as otherwise provided in subsection (d), IC 26-1-9.1-316(d), and IC 26-1-
> 9.1-316(e), duration and renewal of perfection of a security interest perfected by
> compliance with the requirements prescribed by statute, regulation, or treaty
> described in subsection (a) are governed by the statute, regulation or treaty.  In other
> respects, the security interest is subject to IC 26-1-9.1

Based on the language emphasized above, the Trustee argues that "[o]bviously, a lienholder **must**

have their name listed on the title to be perfected, as the word only is used."  The Trustee further

argues that "[t]his reading of the UCC, as adopted by Indiana, is consistent with Indiana's titling

statute which indicates that for a lienholder to be perfected the lienholder **must** be listed on the title.

I.C. § 9-17-5." *Trustee's Objection and Memorandum in Opposition to Chrysler Financial's Motion

for Summary Judgment* at 20 (hereinafter, the "Response") (emphasis in the original).

5

Contrary to the Trustee's argument, Indiana's Certificate of Title Act is not so "obvious." In *Petr v. Forum Credit Union (In re Staton)*, Adv. Pro. No. 04-662 (May 24, 2005)(Bankr.S.D.Ind.2005), the Honorable Anthony J. Metz was asked to determine when a security interest in a motor vehicle is perfected for purposes of the Chapter 7 trustee's avoidance powers under 11 U.S.C. § 547. The trustee insisted that, pursuant to Indiana's Certificate of Title Act, Forum's lien did not attach until its name was noted on the vehicle's certificate of title on file with the Indiana Bureau of Motor Vehicles. *Id*. at 7. Forum Credit Union ("Forum") countered that Revised Article 9 effectuated a departure from prior Indiana law and that its security interest was automatically perfected upon attachment pursuant to § 9.1-309. *Id*. at 6-7.

While it ultimately agreed with the Chapter 7 trustee, the court noted that Indiana's Certificate of Title Act "contains no provision which specifically provides that the method to perfect a security interest in an automobile is for the lien to be noted on the certificate of title." *Id*. at 10. Rather, it appears that Indiana courts have consistently read that requirement into the Act. *See id*. at 9 (citing *First Nat. Bank of Milltown v. Schrader*, 375 N.E.2d 1124 (Ind.App.1978) and *United Leaseshares, Inc. v. Citizens Nat. Bank*, 470 N.E.2d 1353 (Ind.Ct.App.1984)).[5] Thus, while the Court agrees with the Trustee's general proposition that, under Indiana law, the only way to perfect

---

[5] As indicated above, Judge Metz ultimately agreed with the trustee that Indiana's Certificate of Title statute establishes the sole method by which to perfect a security interest in a motor vehicle not held as inventory. In reaching that conclusion, the court conceded that § 9.1-311 did alter the language relevant to the Certificate of Title Act from its forerunner, former § 9-302. *Id*. at 9-10. Nevertheless, the court rejected Forum's argument that the statutory changes were intended to disrupt prior Indiana law, finding that various provisions of the Certificate of Title Act "taken together give rise to a strong inference that the legislature intended that liens on automobiles were to be noted on the certificate of title." *Id*. at 11. The court also emphasized that automatic perfection upon attachment with nothing more does not take into account the "unique nature" of automobiles compared to other consumer goods. *Id*. at 11-12. From this, Judge Metz was convinced that "despite the revisions to Article 9 in 2001, the General Assembly did not intend to change existing law with respect to perfection of security interests in automobiles and this Court otherwise is loathe to overturn what has been a well established principle in commercial law." *Id*. at 13.

6

a security interest in a motor vehicle is by noting the interest on the vehicle's Certificate of Title, the Court disagrees that the Certificate of Title Act is explicitly clear on this point.[6]

In any event, Chrysler does not dispute the significance of Indiana's Certificate of Title Act in establishing the manner in which a vehicle lien is perfected.  Rather, it contends that the Certificate of Title Act must be read in concert with § 9.1-310(c).  That provision provides that "[i]f a secured creditor assigns a perfected security interest or agricultural lien, a filing under IC 26-1-9.1 is not required to continue the perfected status of the security interest against creditors of and transferees of the original debtor."   Because there is no question that Chrysler's lien was noted on the Vehicle's certificate of title and was, therefore, perfected, Chrysler argues that the Trust, as Chrysler's assignee, was not required to take any further steps to maintain perfection pursuant to § 9.1-310(c).

In addressing Chrysler's argument, the Court looks to Revised Article 9's official comments and, in particular to Comment 4 to Revised § 9-310 ("Comment 4").  While Indiana did not adopt the U.C.C.'s official comments,[7] courts have historically treated them as an authoritative guide.  *See,*

---

[6]  The Court emphasizes that the *Staton* opinion does not address the question posed here, *i.e.*, whether an assignee of a properly perfected motor vehicle lien must take further steps to maintain perfection.  Thus, while the Court agrees with *Staton's* analysis and holding, the Court takes issue with the Trustee's reliance on the case to support his claim.  *See Trustee's Response* at 32-33.

[7]  The Trustee insists that "Indiana has adopted its own comments rather than the UCC Comments . . . ."  *See Trustee's Response* at 23.  For this proposition, the Trustee directs the Court to the "Indiana Comment" that appears under the heading "Compiler's Notes" for Indiana Code § 26-1-9.1-310, as published in Burns Indiana Statutes Annotated.  As explained below, the Trustee is incorrect in his understanding of the "Indiana Comments."  The Compiler's Notes to Indiana Code § 26-1-9.1-101 provide:
> The Indiana Comments throughout this chapter were prepared by Professor Harry Pratter and Professor Bruce Townsend of the Indiana University School of Law, upon the original adoption of the UCC by Indiana in 1963.  These comments have not been updated to reflect any changes or modifications to the statutes since that time.  The compiler has retained these commentaries because they provide the user with excellent discussions of pre-UCC Indiana state law.

*Compiler's Notes*, IND. CODE § 26-1-9.1-101 (BURNS. IND. STATS. ANN).  The Comments were privately

7

*e.g., Collins v. Pfizer, Inc.*, WL 126913 at 3 (S.D.Ind.2009) (citing *Olcott Int'l & Co. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1074 (Ind.Ct.App.2003)); *Jackson v. Luellen Farms, Inc.*, 877 N.E.2d 848, 853 n.7 (Ind.Ct.App.2007) (noting that because the Indiana provision in question was "largely a wholesale adoption" of the U.C.C., the court considered the official comments to be "'persuasive in interpreting the language of the Code'") (quoting *Intelogic Trace Texcom Group, Inc. v. Merchants Nat'l Bank*, 626 N.E.2d 839, 844 n.7 (Ind.Ct.App.1993), *trans. denied.*).  The appellate court in *Jackson* further noted that "a rationale for giving these comments such persuasive authority is that the underlying purpose of Indiana's adoption of the U.C.C. is 'to make uniform the law among the various jurisdictions,'" *Jackson*, 877 N.E.2d at 853 n.7 (quoting Indiana Code § 26-1-1-102(2)(c)).

Comment 4 provides:

4.  **Assignments of Perfected Security Interests.**  Subsection (c) concerns assignment of a perfected security interest or agricultural lien.  It provides that no filing is necessary in connection with an assignment by a secured party to an assignee in order to maintain perfection as against creditors of and transferees from the original debtor.

**Example 1:  Buyer buys goods from Seller, who retains a security interest in them.  After Seller perfects the security interest by filing, Seller assigns the perfected security interest to X.  The security interest, in X's hands and without further steps on X's part, continues perfected against *Buyer's* transferees and creditors.**

---

funded and, while they were written at the request of the Indiana Commission on Uniform State Laws, there is nothing in their history to suggest that they were considered to be "official" in any way or that they were intended to be used as an authoritative guide by either the General Assembly or the courts.  *See Indiana Commercial Code with Comments*, Preface at iii (Bobbs-Merrill Co., Inc., 1963).  The Court could only find two Indiana cases that cite to them in any way.  *Yoder v. Cromwell State Bank*, 478 d.2d 131 (Ind.Ct.App.1985) and *Hahn v. Ford Motor Co.*, 434 N.E.2d 943 (Ind.Ct.App.1982).  The Indiana Comments do not appear in other published versions of the Indiana Code.  Based on the foregoing, the Court concludes that whatever import the Indiana Comments may once have had, they are not certainly not controlling or even instructive with respect to Revised Article 9.  At most, they provide some historical background.

Example 2: Dealer creates a security interest in specific equipment in favor of Lender. After Lender perfects the security interest in the equipment by filing, Lender assigns the chattel paper (which includes the perfected security interest in Dealer's equipment) to X. The security interest in the equipment, in X's hands and without further steps on X's part, continues perfected against *Dealer's* transferees and creditors. However, regardless of whether Lender made the assignment to secure Lender's obligation to X or whether the assignment was an outright sale of the chattel paper, the assignment creates a security interest in the chattel paper in favor of X. Accordingly, X must take whatever steps may be required for perfection in order to be protected against *Lender's* transferees and creditors with respect to the chattel paper.

Subsection (c) applies not only to an assignment of a security interest perfected by filing but also to an assignment of a security interest perfected by a method other than by filing, such as by control or by possession. Although subsection (c) addresses explicitly only the absence of an additional filing requirement, the same result normally will follow in the case of an assignment of a security interest perfected by a method other than by filing. For example, as long as possession of collateral is maintained by an assignee or by the assignor or another person on behalf of the assignee, no further perfection steps need be taken on account of the assignment to continue perfection as against creditors and transferees of the original debtor. Of course, additional action may be required for perfection of the assignee's interest as against creditors and transferees of the *assignor*.

**Similarly, subsection (c) applies to the assignment of a security interest perfected by compliance with a statute, regulation, or treaty under Section 9-311(b), such as a certificate-of-title statute. Unless the statute expressly provides to the contrary, the security interest will remain perfected against creditors of and transferees from the original debtor, even if the assignee takes no action to cause the certificate of title to reflect the assignment or to cause its name to appear on the certificate of title. See PEB Commentary No. 12, which discusses this issue under former Section 9-302(3). Compliance with the statute is "equivalent to filing" under Section 9-311(b).**

(emphasis added). As indicated above, then, the pivotal question for the Court appears to be whether Indiana's Certificate of Title Act "expressly provides to the contrary." If it does not, then Chrysler's position–that the Trust was not required to take any further steps to maintain perfection of its lien–is correct under § 9.1-310(c).

The Trustee directs the Court to Indiana Code § 9-17-3-3 as the provision within the

Certificate of Title Act that is "expressly to the contrary."  That provision provides in relevant part:

> (a) If a vehicle for which a certificate of title has been issued is sold or if the ownership of the vehicle is transferred in any manner other than by a transfer on death conveyance under section 9 of this chapter, the person who holds the certificate of title must do the following:
>
>> (1) Endorse on the certificate of title an assignment of the certificate of title with warranty of title, in a form printed on the certificate of title, with a statement describing all liens or encumbrances on the vehicle.
>>
>> (2) Except as provided in subdivisions (4) and (5), deliver the certificate of title to the purchaser or transferee at the time of the sale or delivery to the purchaser or transferee of the vehicle, if the purchaser or transferee has made all agreed upon initial payments for the vehicle, including delivery of a trade-in vehicle without hidden or undisclosed statutory liens.
>>
>> (3) Unless the vehicle is being sold or transferred to a dealer licensed under IC 9-23-2 . . . .

On its face, this provision appears to be wholly inapplicable to this proceeding, as the Vehicle has not been sold, nor its ownership transferred.  In an effort to counter that reading of the statute, however, the Trustee argues that Chrysler is the "owner" for purposes of the provision and that its "transfer" of the Contract to the Trust triggered the provision's requirements.  *See Trustee's Sur-Reply at 9.*  Quoting definitions from Black's Law Dictionary, the Trustee contends that Chrysler is the "legal owner" of the Vehicle, while the Debtors are "equitable owners."  *Id*. at n.6.  The Trustee then directs the Court to the definition of "owner" set forth in Indiana Code § 9-13-2-121, which states in relevant part that when used in reference to a motor vehicle, "owner" means "a person who holds legal title of a motor vehicle."

As explained in *Madrid v. Bloomington Auto Company, Inc.*, 782 N.E.2d 386 (Ind.Ct.App.2003), the Trustee is mistaken in his understanding of legal title and ownership.  In *Madrid*, the Indiana Court of Appeals was asked, *inter alia*, to determine whether "legal title to a

motor vehicle is governed by Indiana's Certificate of Title Act or the sales provisions of the UCC." *Id*. at 391. In answering that question, the court noted that states utilize two different types of motor vehicle certificate of title structures–an "ownership" system and a "registration" system. *Id*. Under an ownership system, legal title does not pass until a title certificate passes. The certificate of title statute under an ownership system was intended to displace standard commercial law with respect to motor vehicle ownership. In contrast, under a registration system, standard commercial law governs automobile ownership and a certificate of title merely creates a right to register and use a vehicle on public roads. *Id.*

After reviewing existing Indiana case law and the Indiana Certificate of Title Act, the appellate court concluded that Indiana utilizes a "registration" system. *Id*. at 395. As such, legal title and ownership is determined by the U.C.C. In particular, the court looked to Indiana Code § 26-1-2-401, which provides that "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time and place." *Id*. at 395; *accord Pekins Ins. Co. v. Charlie Rowe Chevrolet, Inc*., 556 N.E.2d 1367 (Ind.Ct.App.1990).

Pursuant to Indiana Code § 26-1-2-401, then, the Debtors took legal title of the Vehicle when they purchased it from Dellen and they, not Chrysler, are the "owners" for purposes of Indiana Code § 9-17-3-3. Because the transfer at issue in this proceeding is of the Contract, not the Vehicle, Indiana Code § 9-17-3-3 is simply inapplicable here. The Court, therefore, rejects the Trustee's argument that this provision obligated the Trust, notwithstanding § 9.1-310(c), to note its lien on the Vehicle's certificate of title in order to maintain perfection.

11

### B. The Trustee's Remaining Arguments

The Trustee makes several other arguments in defense of summary judgment. As explained below, all are unavailing.

### 1. Perfection of Chattel Paper

In his Response, the Trustee cites language from Comment 4 to support his argument that the Trust was required to note its interest on the Vehicle's certificate of title. Specifically, the Trustee states:

> The UCC Commentary Example 2 refers to a security interest in specific equipment that has been assigned. However, equipment does not have a title. Then the official comment goes on to state that "Subsection (c) applies not only to an assignment of a security interest perfected by filing but also to an assignment of a security interest perfected by a method other than by filing, such as by control or by possession." Nowhere in that statement does it say this section applies to a motor vehicle. However it does state:
>
>> The same result normally will follow in a case of an assignment of a security interest perfected by a method other than by filing. For example, as long as possession of collateral is maintained by an assignee or by the assignor or another person on behalf of the assignee, no further perfection steps need be taken on account of the assignment to continue perfection as against creditors and transferees of the original debtor. **Of course, additional steps may be required for perfection of the assignee's interest** as against creditors and transferees of the assignor.
>
> Again, the bold language above refers to re-titling the car with the BMV. Chrysler fails to acknowledge this aspect of Indiana law in its motion for summary judgment.

*Trustee's Response* at 27-28 (emphasis added by Trustee).

The Court disagrees with the Trustee's characterization of the language emboldened above. Commentary Number 12 of the U.C.C.'s Permanent Editorial Board (the "PEB Commentary"), to

12

which Comment 4 cites, is instructive in this regard:[8]

> The assignment of that security interest, whether by a grant of the security interest in the underlying security agreement (chattel paper) between the assignor-secured party and the original debtor, or a sale of that chattel paper . . . is a separate and distinct secured transaction and involves different considerations. The validity and perfection of the assignee's security interest against *the creditors of the transferees from the assignor-secured party* is governed entirely by Article 9 and a jurisdiction's certificate of title statute has no applicability. Perfection would be accomplished by the assignee either taking possession of the chattel paper . . . or by filing a financing statement against the assignor-secured party. [Comment 4 to Revised § 310] makes it clear that the rules set forth in [Revised § 9-310(c)] do not apply to the perfection of the assignee's interest in the security agreement when viewed in relation to the creditors of the transferees from the assignor-secured party. [Revised § 9-310(c)] only obviates the need to take further steps in order to continue perfection of the security interest in the underlying vehicle against *the creditors of and the transferees from the original debtor*.

PEB Commentary No. 12 at n. 2 (italics in the original). The PEB Commentary makes abundantly clear that the language in Comment 4 emphasized by the Trustee does not refer to Indiana's Certificate of Title Act. Rather, the "additional steps" referenced in Comment 4 are the steps necessary under Revised Article 9 to perfect a lien on chattel paper. *See* Revised § 9-312.

For this same reason, the Trustee is incorrect in asserting that summary judgment is inappropriate in this case because the Court lacks evidence as to whether the Trust has perfected whatever lien it may have on the Contract. *See Trustee's Sur-Reply* at 9 ("[T]here is no evidence in the record as to the perfection of the chattel paper" and "[a]s such, summary judgment cannot be granted in favor of Chrysler because the record does not reflect that the chattel paper is perfected."). Again, the PEB Commentary makes clear that perfection of the Trust's interest in the Contract has

---

[8] PEB Commentary No. 12 was initially written with reference to old Article 9 and, in particular, to § 9-302. The Commentary remains relevant in interpreting Revised §§ 9-310 and 9-311, the counterparts to 9-302 under Revised Article 9, as it is cited in the official comments thereto. For purposes of clarity, the Court has changed the Commentary's citations to § 9-302 to Revised §§ 9-310 and 9-311 where appropriate.

13

absolutely no bearing on whether the Trust's lien on the Vehicle is perfected.  The only question

relevant to the Trustee and to the Debtors' bankruptcy estate is whether the Trust's lien *on the*

*Vehicle* has been perfected.  Chrysler is not the debtor here, and the Contract is not property of the

estate.  Thus, even assuming the Trust's lien *on the Contract* is unperfected, the Trustee is without

the power or authority to avoid it.  See 11 U.S.C. § 544.

## 2.  Chrysler's Prospectus

The Trustee has designated and quoted various portions of Chrysler's filings with the

Securities and Exchange Commission.  With respect to them, the Trustee states:

> Here, Chrysler had knowledge of the perfection laws in Indiana, as it originally
> perfected its interest.  Chrysler had knowledge and could have perfected [the] Trust's
> interest by following the same exact steps Chrysler took to initially perfect its
> security interest. Allowing Chrysler to prevail on this claim would encourage
> deception and misinformation.

*Trustee's Response* at 21.    The Trustee specifically quotes the following from a prospectus

apparently filed by Chrysler with respect to its asset based auto securitization trusts:

> "**Perfection of security interests in the automobiles** and light duty trucks financed by
> the depositor [Chrysler] **is generally governed by the motor vehicle registration laws
> of the state** in which the vehicle is located. In all states in which the receivables have
> been originated, **a security interest in automobiles** and light duty trucks **is perfected
> by obtaining the certificate of title** to the financed vehicle **or a notation of the
> secured party's lien on the vehicles' certificate of title**. . . .

> Because the depositor [Chrysler] continues to service the contracts, **the obligors on
> the contracts will not be notified of the sale to a trust**. **No action will be taken to
> record the transfer of the security interest from the depositor [Chrysler] to a
> trust by amendment of the certificates of title for the financed vehicles or
> otherwise**. . .

> The depositor [Chrysler] will assign its security interests in the financed vehicles
> securing the related receivables to each trust pursuant to the related Sale and
> Servicing Agreement. However, because of the **administrative burden and
> expense**, **neither the depositor nor the related owner trustee will amend any
> certificate of title to identify a trust as the new secured party on the certificate

**of title relating to a financed vehicle**. Also, the depositor will continue to hold any certificates of title relating to the vehicles in its possession as custodian for the trust . . .

In most states, an assignment such as that under each Sale and Servicing Agreement is an effective conveyance of a security interest without amendment of any lien noted on a vehicle's certificate of title, and the assignee succeeds thereby to the assignor's rights as secured party. **However, by not identifying a trust as the secured party on the certificate of title, the security interest of a trust in the vehicle could be defeated through fraud or negligence**. . . If there are any financed vehicles as to which the depositor failed to obtain or assign to a trust a perfected security interest, the security interest of that trust would be subordinate to, among others, the interests of subsequent purchasers of the financed vehicles and holders of perfected security interests therein. Such a failure, however, would constitute a breach of the warranties of the depositor under the related Sale and Servicing Agreement and would create an obligation of the depositor to repurchase the related receivable unless the breach were cured. Refer to *'Sale Provisions' and 'Risk Factors — Trusts May Not have a Perfected Security Interest in Certain Financed Vehicles'.*"

*Id.* at 21-22 (quoting Exhibit A, part 4, to *Response* at 52-53) (emphasis added by the Trustee). From this, the Trustee posits that "Chrysler obviously believes that it may not have a perfected security interest in this matter or it would not have listed this information with the S.E.C. as a risk." *Id*.

In the Court's view, Chrysler's prospectus does not amount to an admission in this case. It appears that Chrysler is merely acknowledging the "risk" that Revised § 9-310(c) makes clear, *i.e.*, that the continued perfection of an assigned lien may be affected by a state's certificate of title statute. This is not an admission, however, that any given lien under any given state's certificate of title statute is unperfected, and it certainly is not an admission that the Trust's lien on the Vehicle at issue in this case is not perfected.

The Court also emphasizes that there is *no evidence* to suggest that Chrysler or the Trust is attempting to deceive or misinform anyone. Even assuming that Chrysler's position is wrong under Indiana law, it does not follow that Chrysler or the Trust's failure to note the Trust's lien on the

Vehicle's certificate of title was intended to perpetrate some type of fraud.

### 3. Indiana Administrative Code

The Trustee directs the Court to several provisions of Indiana's Administrative Code as support for his argument that Indiana's Certificate of Title Act requires an assignee of a properly perfected motor vehicle lienholder to note its name and interest on the vehicle's certificate of title. The Court finds all of these provisions to be inapplicable.

The Trustee first cites to 140 Indiana Administrative Code § 6-1-3. That provision outlines the process to retitle a vehicle because of a "name change." Read in its entirety, it is clear that the provision pertains only to changes to the *legal owner's* name, not the lienholder of the vehicle. This is particularly evident from the fact that the provision contemplates that the Bureau of Motor Vehicles will issue a new license plate once a name change has been approved. See 140 IAC 6-1-3(B)(3)(e). Per the Trustee's reasoning, the Bureau of Motor Vehicles would have had to issue a new license plate when Chrysler assigned its Contract with the Debtors to the Trust. That, however, is clearly illogical.

The Trustee next cites 140 Indiana Administrative Code 6-1-2. That provision generally deals with the requirements for an application for a certificate of title. The Trustee specifically quotes the requirement that an application include "a lien release if necessary." That subpart of the provision specifically applies to an applicant "who purchased a vehicle and is unable to obtain a properly executed title for a vehicle that is valued at five thousand dollars ($5,000) or less . . . ." 140 IAC 6-1-2(e)(5). The Trustee also cites to subsection (h), which states in relevant part that "[t]o record a lien on an existing title, an applicant must apply for a new title and include the new lienholder's information . . . ." From this, the Trustee reasons that "Indiana's Administrative Code

16

. . . clearly explains Chrysler's assignment to the Trust is a name change and the Trust needs a lien release from Chrysler before the Trust's lien could be recorded on the new title." *Trustee's Response* at 29.

The Trustee's logic is flawed. As the Court has already explained, Chrysler's assignment to the Trust does not constitute a "name change" for purposes of Indiana's Administrative Code. Secondly, the assignment did not constitute or necessitate a "lien release." Chrysler's assignment of its lien to the Trust did not create a new lien. Rather, the Trust merely stepped into Chrysler's shoes. *See, e.g., Pettit v. Pettit,* 626 N.E.2d 444, 447 (Ind.1993). The Trustee's circular argument under 140 Administrative Code 6-1-2 is also unavailing. The requirements of that provision do not apply unless and until the Court otherwise concludes that the Trust was required to take additional steps under the Certificate of Title Act to maintain perfection of the lien. Absent that conclusion, the Vehicle's existing title already reflects the lien and there would be no need to essentially re-record it.

The Trustee also cites to 140 Indiana Administrative Code 6-1-4(b)'s requirement that "to remove a name from a title, each person whose name appears on the title must sign the application as a seller. . . . Then the person whose name will appear on the new title shall sign the old title as purchaser." Clearly, this provision applies to the legal owner's sale of the vehicle so that the buyer's name may now appear on the vehicle's title. It is unclear to the Court why this provision would apply here, as the sale of the Vehicle is not at issue.

### 4. Indiana Code § 9-17-5

As support for his position, the Trustee argues that Chrysler is subject to the infractions imposed by Indiana Code § 9-17-5-3. That section imposes a Class C infraction for any violation

17

of Chapter 5 of Title 9.  Indiana Code § 9-17-5-1, in turn, provides in relevant part:[9]

> A person having possession of a certificate of title for a motor vehicle . . . because the person has a lien or an encumbrance on the motor vehicle . . . must deliver not more than ten (10) business days after receipt of the payment [of] the satisfaction or discharge of the lien or encumbrance indicated upon the certificate of title to the person who:
> (1) is listed on the certificate of title as owner of the motor vehicle . . .; or
> (2) is acting as an agent of the owner who holds power of attorney for the owner of the motor vehicle . . . .

Pursuant to this statute, the Trustee claims that Chrysler had ten days to turn over the certificate of title to the Trust, arguing that the lien was satisfied when it was sold or assigned to the Trust. *Trustee's Response* at 31.

Presumably, the Trustee is again confused as to who the "owner" of the Vehicle is for purposes of the Certificate of Title Act.  As already stated, neither Chrysler nor the Trust is the owner; the Debtors are.  Thus, the "satisfaction or discharge" referred to in Indiana Code § 9-17-5-1 is the Debtors' repayment of their loan pursuant to the terms of the Contract.  The assignment or sale of the Contract from Chrysler to the Trust did not serve to satisfy or discharge the lien.  The bankruptcy court's decision in *Gaines v. Ford Motor Credit Corp. (In re Gaines)*, 414 B.R. 494 (Bankr.E.D.Ark.2009) supports this interpretation.  In analyzing a similar provision in Arkansas's certificate of title statute, the court in *Gaines* explained that "most courts recognize that the assignment of a lien does not create a 'new' lien and since no final payment occurs the statute does not apply."  *Id*. at 497-498 (citing *In re Wuerzberger*, 284 B.R. 814 (Bankr.W.D.Va.2002); *In re Field*, 263 B.R. 323 (Bankr.D.Idaho 2001)).

---

[9] The other provision within Indiana Code 9-17-5 is clearly inapplicable and does not warrant discussion.  *See* IND. CODE § 9-17-5-2 (repossession by lienholder).

### 5. Indiana Code § 32-18-1-3

At several points in his briefs, the Trustee refers to Indiana Code § 32-18-1-3 for the proposition that the Trust had a duty to record its assignment from Chrysler with the Clerk of the Henry County Circuit Court, *i.e.*, in the county where Debtors reside. The Trustee's reliance on that statute is misplaced. Indiana Code § 32-18-1-3 pertains to "assignments for the benefit of creditors"–a state alternative to bankruptcy whereby a debtor entity assigns its property in trust for the benefit of the entity's bona fide creditors. *See* IND. CODE § 32-18-1-1. Chrysler's assignment of the Contract to the Trust was clearly not an assignment for the benefit of creditors.

### 6. Case law from other jurisdictions

The parties direct the Court to several cases from other jurisdictions that have addressed the issue raised by the Trustee's Complaint. Two of them are worth discussing in detail.

Chrysler directs the Court to *In re Johnson*, 407 B.R. 364 (Bankr.E.D.Ark.2009). In that case, the Chapter 7 trustee, by way of an objection to a relief from stay motion, raised the same issue raised by the Trustee here. *Id.* at 364. As in Indiana, the Arkansas certificate of title statute provides that a lien on an automobile must be noted on the vehicles's certificate of title to be perfected. *Id.* at 366 (citing ARK. CODE ANN. §§ 27-14-806 and -807). Arkansas law further provides:

> (a) Any person holding a lien or encumbrance upon a vehicle, other than a lien dependent solely upon possession, may assign his or her title or interest in or to the vehicle to a person other than the owner without the consent of the owner, and without affecting the interest of the owner or the registration of the vehicle, but in such event, he or she shall give to the owner a written notice of assignment.

> (b) The Office of Motor Vehicle, upon receiving a certificate of title assigned by the holder of a lien or encumbrance shown thereon and given the name and address of the assignee, shall issue a new certificate of title as upon an original application.

*Id.* (citing ARK. CODE ANN. § 27-14-908).

Citing to Arkansas's version of Revised §§ 9-310(c) and 9-311, along with the PEB Commentary,[10] the court concluded that the above provision is merely permissive and does not require an assignee to cause a new title to be issued showing the name of the assignee as the lien holder:

> Arkansas Code Annotated § 27-14-908, which addresses assignments of vehicle liens, is not in subchapter 8 [the subchapter that specifically governs the perfection of vehicle liens]. This section is found in subchapter 9 which does not deal with or even mention the issue of perfection; rather, it gives a lien holder the right to assign a lien and requires the Office of Motor Vehicles to issue a new certificate of title upon receiving the assigned certificate of title. The language of Arkansas Code Annotated § 27-14-805 addresses perfection when issuing a new certificate of title but this statute does not provide that failure to issue a new certificate of title pursuant to Arkansas Code Annotated § 27-14-908 results in the lien being unperfected.
>
> * * * * *
>
> The UCC adopted by the General Assembly and the commentary state that the language used in Arkansas Code Annotated § 27-14-908 should be read as permissive and the overall scheme of the UCC should be followed if at all possible. The general rule under the UCC is that no further action need be taken to continue perfection when dealing with assignments. Reading the UCC and the Certificate of Title Act together, the Court cannot infer that the General Assembly meant that failure to comply with Arkansas Code Annotated § 27-14-908 would result in an assigned lien in a motor vehicle being unperfected.

*Id.* at 368-69; *accord Gaines*, 414 B.R. at 497 (adopting *Johnson's* reasoning and conclusion).

The Trustee insists that *Johnson* is irrelevant to this Court's analysis, given the differences

---

[10] Specifically, the *Johnson* court quoted the following from the PEB Commentary:
"[S]trict and literal construction of a certificate of title statute should be avoided if it produces a result that unnecessarily conflicts with the Uniform Commercial Code.

* * * * *

Those certificate of title statutes that do not specifically require, as a condition of perfection, that an assignee have the certificate of title endorsed or reissued to name itself as a lien holder, but instead contain phrases: . . . 'upon receiving a certificate,' . . . may be construed . . . as being merely permissive on this issue and as not requiring further action in order to continue perfection."

*Id.* at 367.

between the Indiana and Arkansas certificate of title statutes. While *Johnson* is obviously not controlling, the Court finds that it is both instructive and persuasive. As in Arkansas, Indiana law provides that a security interest on a motor vehicle must be noted on the vehicle's certificate of title to be perfected. As in Arkansas, Indiana has adopted Revised § 9-310(c). As in Arkansas, there is no provision *within the Certificate of Title Act* that expressly provides that an assignee of a properly perfected motor vehicle lienholder must take additional steps, *i.e.*, note its name on the certificate of title, in order to maintain perfection of the lien. Arguably, then, *Johnson* supports Chrysler's position on summary judgment.

The Trustee instead directs the Court to *Clark Contracting Services, Inc. v. Wells Fargo* (*In re Clark Contracting Services*), 399 B.R. 789 (Bankr.W.D.Tex.2008). In that case, the bankruptcy court was asked to interpret Texas's certificate of title statute and, in particular, the following provision in light of Revised § 9-310(c):

> (a) A lienholder may assign a lien recorded under Section 501.113 by:
> > (1) applying to the county assessor-collector for the assignment of the lien; and
> > (2) notifying the debtor of the assignment.
> (b) A lienholder's failure to notify a debtor of an assignment does not create a cause of action against the lienholder.
> (c) An application under Subsection (a) must be:
> > (1) signed by the person to whom the lien is assigned; and
> > (2) accompanied by:
> (A) the application fee;
> (B) a copy of the assignment agreement executed by the parties; and
> (C) the certificate of title on which the lien to be assigned is recorded.
> (d) On receipt of the completed application and fee, the department:
> > (1) may amend the department's records to substitute the subsequent lienholder for the previous lienholder; and
> > (2) shall issue a new certificate of title as provided by Section 501.027.
> (e) The issuance of a certificate of title under Subsection (d) is recordation of the assignment. The time of recordation of a lien assigned under this section is considered to be the time the lien was recorded under Section 501.113.

21

*See id.* at 798 n.12 (quoting TEX. TRANSP. CODE § 501.114).  Unlike the *Johnson* court, the court

in *Clark* found the procedure outlined above to be mandatory:

> Read *in part materia*, the intent of the Certificate of Title Act seems clear.  An
> assignee who wants to be assured that its lien will "relate back" to the recordation
> date of the original lien by the assignor needs to follow the procedures set out in this
> section. . . . The only recognized means of perfection in the Act, namely notation on
> the fact of the title of the name and address of the current lienholder, seems fairly
> obviously to imply that an assignee who wants to be able to stand in the shows of the
> assignor with continued perfection needs to be [sic] make sure that the assignee is
> shown on the face of the certificate of title, with a proper name and address.  There
> is no other means of perfection available under the Act, and none other is even
> implied.

*Id.* at 800.

The *Clark* decision is viewed as an anomaly and has been widely criticized.  *See, e.g., Red*

*Flag: Texas Court Requires Assignees of Vehicle Contracts to Get Lien Noted on New Certificates*

*of Title,* CLARK'S SECURED TRANSACTIONS (February 2009); Alvin C. Harrell, *Case Note, Clerk*

*Contracting Services, Inc. v. Wells Fargo–Does an Assignee of a CT Lien Entry Become*

*Unperfected*, 62 CONSUMER FIN.L.Q.REP. 274 (2008) (stating that the *Clark* decision is "based on

a series of errors that led the court to an incorrect conclusion.  As a consequence, the case

misinterprets the relation between the [U.C.C.] Article 9 and state [certificate of title] laws in

fundamental ways that could inappropriately affect a variety of other transactions.").  The Court

further notes that following the bankruptcy court's decision in *Clark*, the Texas legislature promptly

passed legislation that essentially overturned it.  *See* Michael D. Jewesson, *Texas Legislature Passes*

*Certificate of Title Bill Negating Effect of Clark Contracting Decision* (citing Senate Bill 1592, S.B.

1592, 81st Leg., Reg. Sess. (Tex.2009)), 28 No. 8 LJN's EQUIPMENT LEASING NEWSL. 1.

Even if the Court were to agree with the result in *Clark* based on the *Texas* certificate of title

statute, the decision simply does not support a similar conclusion under Indiana's Certificate of Title

Act.  Unlike Texas's statutory scheme, Indiana's Certificate of Title Act contains no provision that

even generally addresses the assignment of motor vehicle liens; nor is there a provision that sets

forth a procedure for obtaining a new title upon a lien's assignment.  Most significantly, there is no

provision that expressly states that an assignee must note its name on a vehicle's certificate of title

in order to be perfected.  In this regard, the Court again finds the PEB Commentary to be instructive:

> [I]n order to determine whether [Revised § 9- 310(c)] is applicable to security
> interests perfected under [Revised § 9- 311(a) and (b)], it is first necessary to
> ascertain whether the certificate of title statute applicable to the particular transaction
> contains provisions concerning an assignment of a security interest and, if so,
> whether such provisions relate to perfection.
>
> * * * * *
>
> [Revised § 9-310(c)] can . . . be construed consistently with the certificate of title
> statutes in those jurisdictions where the latter is either silent as to assignments . . . or
> where there is an isolated reference to an assignee but no mention of perfection. . .
> . In those circumstances, [Revised § 9-311(a) and (b)] do not have the effect of
> substituting the requirements of the certificate of title statute relating to perfection
> for "filing under this Article," inasmuch as the certificate of title statute does not
> state, within the purview of those UCC provisions, any requirement that the
> assignment of the security interest be noted on the certificate of title.  As a result,
> [Revised § 9-310(c)] remains applicable.

Thus, in the absence of an explicit provision within the Indiana Certificate of Statute Act relating

to assignments and perfection, the Court must conclude that the U.C.C. and, in particular, § 9.1-

310(c), dictates the outcome of the Trustee's Complaint and compels the Court to conclude that the

Trust's lien is perfected.

### C. Conclusion

The Court agrees with the Trustee that in order to perfect a security interest in a motor

vehicle not held as inventory, the lien must be noted on the vehicle's certificate of title.  However,

there is *no* provision in Indiana's Certificate of Title Act that explicitly, or even implicitly, requires

an assignee of a properly perfected lienholder to take any additional steps to maintain perfection of

23

its lien. With guidance from both Comment 4 and the PEB Commentary, the Court concludes that in the absence of such a provision, § 9.1-310(c) controls. Thus, because Chrysler's lien was undisputedly perfected under the Certificate of Title Act, the Trust's lien is also perfected, despite the fact that it does not appear on the Vehicle's Certificate of Title.[11]

Having reached that conclusion, the Court feels compelled to make a few other observations. While the Court has made every attempt to address the merits of the Trustee's Complaint, it must admit that it has struggled to do so. Many of the Trustee's arguments are not particularly cogent, and the Trustee's briefs are replete with conclusory and self-serving statements.[12] Several of the Trustee's contentions, *e.g.*, that the assignment for the benefit of creditors statute applies here, that Chrysler is the legal owner of the Vehicle, and that summary judgment should be denied because the Court lacks any evidence that the Trust's lien on the Contract is perfected, are based on a faulty or confused understanding of commercial law. The Court is also troubled by the Trustee's seeming unwillingness to acknowledge or appreciate the significance of § 9.1-310(c) and its official

---

[11] In reaching that conclusion, the Court rejects the Trustee's characterization that the Trust's lien is a "secret lien." *Trustee's Response* at 18. While the Trust's identity as the lienholder is not evident from the face of the Vehicle's certificate of title, the fact that the vehicle is encumbered *is* evident and is certainly not secret. As reflected in Revised § 9-506–which states that a financing statement is effective, even if it has minor errors or omissions, unless the errors or omissions are seriously misleading–the drafters of the U.C.C. were not overly concerned with the precise identification of the secured party. See U.C.C. § 9-506, cmt. 2 ("Inasmuch as searches are not conducted under the secured party's name, and no filing is needed to continue the perfected status of security interest after it is assigned, an error in the name of the secured party or its representative will not be seriously misleading."). In the absence of a contrary provision specific to motor vehicles, the Court assumes that § 9.1-506 applies to certificates of title, too.

[12] For example, the Trustee's argument with respect to the *Johnson* and *Clark* cases is confusing at best. While the Trustee maintains that *Clark* supports his position, he also takes issue with Chrysler's reliance on case law from other jurisdictions, arguing that such law is "clearly inapplicable" to this proceeding "as each of Chrysler's cases pertain to a state where there is a statute specifically designed to allow assignments of liens." The Trustee then confusingly states that "case law from Texas is much more applicable because the lienholder in that case failed to comply with the statutes of Texas." *Trustee's Response* at 33. So, by the Trustee's "logic," the Court should not look to an Arkansas bankruptcy case applying Arkansas law, but it should look to a Texas bankruptcy case applying Texas law.

commentary.  The Trustee doggedly asserts that a motor vehicle lien can **only** be and **must**[13] be perfected by a notation on the vehicle's certificate of title, but ignores the rather obvious import of § 9.1-310(c), directing the Court instead to numerous statutes and administrative code provisions that, on their face, are inapplicable to this proceeding.  In this same vein, the Trustee repeatedly and disingenuously takes words and phrases entirely out of context in a vain attempt to support his arguments.[14]  Even giving them the most generous of readings, all of the Trustee's arguments are, in a word, implausible.

There being no genuine issue of material fact, the Court concludes that Chrysler is entitled to summary judgment as a matter of law.  The Court grants Chrysler's motion for summary judgment, and it will issue a Judgment contemporaneously herewith that is consistent with these Findings of Fact and Conclusions of Law.

### ###

Distribution:

Julia A. Camden
Elizabeth B. Alphin
Richard E. Boston
UST

---

[13]  The Trustee repeatedly emphasizes these words in his briefs.  *See, e.g., Trustee's Response* at 20, 23, 26, 32, and 33.

[14]  The Trustee's argument on page 27 of his Response is a good example of this.  There, he quotes a portion of Comment 4, adding emphasis only to the phrase "X must take whatever steps may be required for perfection in order to be perfected" to support the proposition that the Trust was required to note its lien on the Vehicle's certificate of title.  However, the **entire** sentence reads "Accordingly, X must take whatever steps may be required for perfection in order to be perfected against Lender's transferees and creditors with respect to the chattel paper."  Clearly, the sentence refers, not to requirements of the certificate of title statute, but to the perfection requirements of Revised Article 9 for liens on chattel paper.